## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

FILED

Civil Action No. 05m303013DMAP

U.S. DISTRICT
DISTRICT OF

| | |
|---|---|
| **LECTRON LABS, INC.** | ) |
| | ) |
| **Plaintiff** | ) |
| | ) |
| | ) |
| **C.S. INDUSTRIES, LLC; DONALD** | ) |
| **SNYDER; AND BETTINA SNYDER** | ) |
| | ) |
| **Defendants** | ) |

**VERIFIED COMPLAINT**

## THE PARTIES

1. Plaintiff, Lectron Labs, Inc. ("Lectron"), is a Connecticut corporation with a place of business at 108 Manor Hill Road, Stratford, Connecticut 06614.

2. Defendant, C.S. Industries, LLC ("C.S. Industries") is, upon information and belief, a Massachusetts limited liability company with a place of business at Palmer Industrial Park, 13 Second Street, Palmer, MA 01069.

3. Defendant Donald Snyder ("Mr. Snyder") is an individual who, upon information and belief, resides at 68 Letendre Avenue, Ludlow, Massachusetts.

4. Defendant Bettina Snyder ("Ms. Snyder") is an individual who, upon information and belief, resides at 68 Letendre Avenue, Ludlow, Massachusetts.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S. C. § 1332(a)(1) in that there is complete diversity of citizenship of the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs, for each defendant.

6. The Court has personal jurisdiction over the defendants in that they reside in this judicial district.

7. Venue is proper in this Court because the defendants reside in and conduct business in this judicial district.

## STATEMENT OF FACTS

8. In 1999 Lectron and two of its shareholders, Patricia Moore Sorrentino, who was referred to in the litigation as Patricia Smith, ("Ms. Smith") and Carol Tartagni ("Ms. Tartagni"), filed a complaint against C.S. Industries, Mr. Snyder and Ms. Snyder (collectively referred to as the "defendants") in the Connecticut Superior Court alleging, among other things, that the defendants conspired in a pattern of conduct designed to devalue or destroy Lectron.

9. On November 28, 2000, the Connecticut Superior Court granted the plaintiffs' motion for default and entered judgment against the defendants due to the repeated failure of the defendants to comply with discovery. See Memorandum of Decision issued by Judge David W. Skolnick, a true and accurate copy of which is attached hereto as Exhibit A, at p.1.

10. A hearing in damages was subsequently held and the Court made the following findings of fact:

> The plaintiffs protected their suppliers, customers, pricing schemes and processes, and treated them as proprietary information. The defendants kept their competing venture secret from the plaintiffs. Specifically, the defendants, while in the plaintiffs' employ: (1) started a competing business, (2) utilized fraudulent means to misappropriate the plaintiffs' most productive and efficient machine, (3) acted to discourage the plaintiffs' existing customers by over quoting jobs, (4) disrupted the plaintiffs' cash flow by not sending out bills, (5) altered the plaintiffs' company records to prevent the plaintiffs' from being able to rehire employees who had been laid off, and (6) solicited the plaintiffs' customers and diverted them to the defendants' new business venture.

Exhibit A at p. 2.

11. The Court entered judgment in favor of the plaintiffs in the total amount of $335,000. The judgment consisted of $235,000 in compensatory damages, $40,000 in punitive damages, $40,000 in damages for Connecticut Unfair Trade Practice Act violations and $20,000 in attorney's fees. Exhibit A.

12. The defendants appealed from the judgment of the Superior Court and the case was subsequently heard by the Connecticut Supreme Court.

13. In a decision dated January 27, 2004, the Connecticut Supreme Court reversed the judgment with respect to the award of damages and attorney's fees to Ms. Smith and Ms. Tartagni and remanded that portion of the case to the trial court with direction to dismiss the action as to those two plaintiffs due to a lack of standing. The judgment in favor of Lectron was affirmed. See Smith v. Snyder, 267 Conn. 456 (2004), a copy of which is attached hereto as Exhibit B.

## COUNT I

14. Lectron incorporates by reference the allegation contained within paragraphs 1 through 13 of the complaint as if set forth herein.

15. The judgment issued by the Connecticut Superior Court in favor of Lectron in the sum of $335,000.00 is entitled to full faith and credit in the Commonwealth of Massachusetts.

16. The defendants have failed to satisfy the judgment held by Lectron in whole or in part.

17. Lectron knows of no liability insurance available to the defendants to satisfy the judgment.

**WHEREFORE**, Lectron respectfully requests that this Court:

    a.    Enter judgment in favor of the plaintiff in the amount of $335,000.00 plus interest;

b.   Award the plaintiff its costs and attorneys fees; and

c.   Award the plaintiff such other relief as this Court determines is proper and just.

Respectfully submitted,
By its Attorneys,

Daniel J. Finnegan, BBO# 561347
Jeffrey E. Poindexter, BBO# 631922
Bulkley, Richardson & Gelinas
1500 Main Street, Suite 2700
Springfield, MA 01115
T: (413) 272-6236
F: (413) 272-6805

Dated: May 31, 2005

## VERIFICATION

I, Vincent Sorrentino, am the authorized agent for Lectron Labs, Inc. Except where allegations are based upon information and belief, I have personal knowledge of the matters set forth in the foregoing Verified Complaint or I have learned the matters set forth in the foregoing Verified Complaint by reviewing certain documents. The allegations contained in the Verified Complaint are true to the best of my present knowledge, information, and belief. I certify under the penalties of perjury on behalf of Lectron Labs that the foregoing is true and correct. Executed this ___ day of May, 2005.

298737

4

| NO. CV99- 0362743-S | ) | SUPERIOR COURT |
|---|---|---|
| PATRICIA SMITH, ET AL | ) | JUDICIAL DISTRICT OF FAIRFIELD |
| VS. | ) | AT BRIDGEPORT |
| CHARLES SNYDER | ) | DECEMBER 14, 2001 |

## MEMORANDUM OF DECISION

This matter is before the court on a hearing in damages. The plaintiffs, Patricia Smith, Carol Tartagni and Lectron Labs, Inc., initially commenced this action as an application for an ex parte temporary restraining order on May 6, 1999, against the defendant, Charles Snyder. Subsequently, the plaintiffs amended their complaint and cited in the defendants CS, Industries, LLC, Donald Snyder and Bettina Snyder. In their amended complaint, the plaintiffs allege that the defendants conspired to: remove a key welding machine thereby depriving the company of certain profitable work, extend insurance benefits to relatives without the consent of the shareholders, lease an automobile without the consent of the shareholders, purchase an automobile without approval, abuse charging privileges, pay employees for sick days not earned, and establish a separate company with the intention of unfairly competing with and depriving the plaintiffs of the value of their investment. On November 28, 2000, the court, *Moran, J.*, granted the plaintiffs' motion for default and entered judgment for the plaintiffs due to the defendants' repeated failure to comply with discovery.

FAIRFIELD, CONNECTICUT
JUDICIAL DISTRICT OF
BRIDGEPORT

2001 DEC 19 P 3 44

OFFICE OF THE CLERK
SUPERIOR COURT

The plaintiffs filed a certificate of closed pleadings on February 27, 2001, and the matter was scheduled for a hearing in damages. At the hearing in damages, the court heard evidence from the parties and ordered briefs limited to the following issue: what authority does the court have to award damages against an at will employee for establishing a competing business and soliciting the employer's clients if the employee is not under a written contract precluding solicitation and competition?

The court makes the following findings of fact. The plaintiffs protected their suppliers, customers, pricing schemes and processes, and treated them as proprietary information. The defendants kept their competing venture secret from the plaintiffs. Specifically, the defendants, while in the plaintiffs' employ: 1) started a competing business, 2) utilized fraudulent means to misappropriate the plaintiffs' most productive and efficient machine, 3) acted to discourage the plaintiffs' existing customers by over quoting jobs, 4) disrupted the plaintiffs' cash flow by not sending out bills, 5) altered the plaintiffs' company records to prevent the plaintiffs' from being able to rehire employees who had been laid off, and 6) solicited the plaintiffs' customers and diverted them to the defendants' new business venture.

The plaintiffs are entitled to damages under Connecticut common law and the Connecticut Unfair Trade Practices Act.

Common Law

"The law is well settled that knowledge acquired by an employee during his employment cannot be used for his own advantage to the injury of the employer during the employment; and after the employment has ceased the employee remains subject to a duty not to use trade secrets, or other confidential information, which he has acquired in the course of his

2

employment, for his own benefit or that of a competitor to the detriment of his former employer. . . . It matters not that there is no specific agreement on the part of the employee not to disclose the knowledge he has so acquired." (Citations omitted.) Allen Manufacturing Co. v. Loika, 145 Conn. 509, 514, 144 A.2d 306 (1958).

The plaintiffs claim that the defendants breached their fiduciary duty to the plaintiffs by misappropriating the plaintiffs' property, customers and business opportunities. A breach of a fiduciary duty owed to an employer "constitutes a reckless indifference to the employers rights." Blum, Shapiro & Co. v. Searles & Houser, Superior Court, judicial district of Hartford at Hartford, Docket No. 586283 (August 11, 1999 Booth, J.) (defendants' actions constituted reckless indifference and the court ruled the plaintiff was entitled to recover punitive damages and attorney's fees in addition to actual damages).

The common law principle of misappropriation, in the context of trade secrets, has been codified in the Connecticut Unfair Trade Secrets Act, General Statutes § 35-50 et seq. See Pro-Fitness, Inc. v. Plankenhorn, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 144106 (December 6, 1995, Karazin, J.) ( "the common law claim for misappropriation of trade secrets has been superseded by the Uniform Trade Secrets Act, General Statutes § 35-50 et seq.") The Connecticut Uniform Trade Secrets Act provides, in pertinent part, that misappropriation means the "disclosure or use of a trade secret of another without express or implied consent by a person who . . . at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use . . . ." General Statutes § 35-51(b)(2)(B)(ii). A trade secret is defined as "information, including a formula,

3

pattern, compilation, program, device, method, technique, process, drawing, cost data, or customer list that: (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." General Statutes § 35-51(d).

"[T]he trial court has broad discretion in determining whether damages are appropriate. . . ." (Citation omitted.) Elm City Cheese Co. v. Federico, 251 Conn. 59, 90, 752 A.2d 1037 (1999). General Statutes § 35-53 (b) provides in relevant part, that "if the court finds willful and malicious misappropriation, the court may award punitive damages . . . and may award reasonable attorney's fees to the prevailing party." Id. In addition to or in lieu of injunctive relief, a complainant may also recover compensatory damages. Dunsmore & Associates v. D'Alessio, Superior Court, judicial district of New Haven at New Haven, Docket No. 409906 (January 6, 2000, Levine, J.) In order to recover such damages, "the plaintiff must prove that it sustained actual loss, or that the defendant was unjustly enriched, as a result of its misappropriation." Id. "Actual loss in this context means the amount of money that the plaintiff lost from the defendant's misappropriation; it is measured by how much better off the plaintiff would have been before the defendant's misappropriation." Id.

"A complainant also may recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss. . . . Unjust enrichment is a very broad and flexible equitable doctrine . . . which has as its basis that it is contrary to equity and good conscience for the defendant to retain a benefit which has come to him at the expense of the plaintiff. . . . Its three basic requirements are (1) that the [defendant was]

4

benefitted [benefited]. (2) the [defendant] unjustly did not pay the [plaintiff] for the benefits, and (3) that the failure of payment was to the [plaintiff's] detriment. . . ." (Citations omitted; internal quotation marks omitted.) Id.

Accordingly, the court finds that the plaintiffs are entitled to the amount of $235,000.00, for compensatory damages due to the defendants' misappropriation of company property, customers and business opportunities. In addition, the court finds that the defendants' conduct was wilful and malicious and awards the plaintiffs punitive damages in the amount of $ 40,000.00.

## CUTPA

General Statutes § 42-110b(a) provides, "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." "[I]n determining whether a practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice . . . offends public policy as it has been established by statutes, the common law or otherwise . . . (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers . . . . All three criteria do not need to be satisfied to support a finding of unfairness." Thames River Recycling, Inc. v. Gallo, 50 Conn. App. 767, 785-86, 720 A.2d 242 (1998). "A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. . . . Morever, [our Supreme Court] has set forth a three part test for satisfying the substantial injury criterion: [1] [the injury] must be substantial; [2] it must not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and [3] it must

be an injury that consumers themselves could not reasonably have avoided." Calandro v. Allstate Ins. Co., 63 Conn. App. 602, 608, 778 A.2d 212 (2001).

"[T]he plaintiff who establishes CUTPA liability has access to a remedy far more comprehensive than the simple damages recoverable under common law . . . This remedy is not limited to mere compensatory damages." (Citations omitted; internal quotation marks omitted.) Larsen Chelsey Realty Co. v. Larsen, 232 Conn. 480, 509, 656 A.2d 1009 (1995). General Statutes § 42-110g(a) provides, in pertinent part, any person who suffers any ascertainable loss as a result of a violation of General Statute § 42-110b, "is entitled to have the trial court consider awarding both punitive damages . . . and attorney's fees." Id. "Awarding punitive damages and attorney's fees under CUTPA is discretionary . . . ." Gargano v. Heyman, 203 Conn. 616, 622, 525 A.2d 1343 (1987). "In order to award punitive or exemplary damages, evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights." (Internal quotation marks omitted.) Id.

The plaintiffs offered credible expert testimony as to the value of Lectron Labs, Inc. as an ongoing business at the end of 1998, said value being $250,000.00 after deducting all expenses and obligations of the company. The court finds that said business equity was seriously compromised and markedly reduced by the aforesaid acts of the defendants. Said acts were directly responsible for the closing of said business and the limiting of the plaintiffs' recovery of assets to approximately $15,000.00, secured from the sale of machinery and equipment.

It is clear from the facts of this case that the defendants engaged in unfair methods of competition as evidenced by their diversion of the plaintiffs' customers and the welding

machine. Further, the defendants acted in a deceptive manner in establishing a competing business while feigning loyalty to the plaintiffs' company. The plaintiffs are therefore entitled to damages in the amount of $235,000.00. In addition, the court finds the defendants' conduct revealed reckless indifference to the plaintiffs' rights and awards the plaintiffs punitive damages.

Therefore, plaintiffs shall recover of the defendants $235,000.00 compensatory damages; $40,000.00 punitive damages; $40,000.00 damages for CUTPA violations; and $20,000.00 attorneys fees.

BY THE COURT,

Judge David W. Skolnick

Westlaw.

267 Conn. 456
267 Conn. 456, 839 A.2d 589
**(Cite as: 267 Conn. 456)**

Page 1

▷
267 Conn. 456, 839 A.2d 589

Supreme Court of Connecticut.
Patricia SMITH et al.
v.
Charles SNYDER et al.
**No. 16801.**
Argued April 22, 2003.
Decided Jan. 27, 2004.

**Background:** Shareholders and corporation brought breach of fiduciary duty and Unfair Trade Practices Act action against former employees who covertly established a competing business while working for corporation. The Superior Court in the Judicial District of Fairfield , Moran  and Skolnick, JJ., granted plaintiffs' motion for a default judgment based on failure of defendants to comply with discovery orders, and after a bench trial entered a damages award for plaintiffs. Defendants appealed.

**Holdings:** The Supreme Court , Zarella, J., held that:
(1) shareholders lacked standing to bring action in their individual capacities;
(2) default judgment and evidence was sufficient to establish that corporation's customer list and pricing scheme were trade secrets;
(3) default judgment and evidence was sufficient to establish that former employees had misappropriated corporation's trade secrets;
(4) default judgment and evidence was sufficient to establish that former employee had violated common-law theory of misappropriation of nontrade secret property;
(5) trial court did not abuse its discretion in awarding punitive damages;
(6) trial court did not abuse its discretion in awarding attorney fees to corporation; but
(7) a party seeking attorney fees must present to trial court a statement of fees requested and a description of services rendered.

Affirmed in part, and reversed and judgment rendered in part.

Borden, J., concurred in part and dissented in part, and filed opinion.

West Headnotes

**[1] Appeal and Error 30 ⛭174**
30k174 Most Cited Cases
Supreme Court can raise issue of standing sua sponte as it implicates its subject matter jurisdiction.

**[2] Action 13 ⛭13**
13k13 Most Cited Cases
"Standing" is the legal right to set judicial machinery in motion.

**[3] Action 13 ⛭13**
13k13 Most Cited Cases
One cannot rightfully invoke the jurisdiction of the court unless he or she has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy.

**[4] Action 13 ⛭13**
13k13 Most Cited Cases
When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue.

**[5] Action 13 ⛭13**
13k13 Most Cited Cases
Standing requires no more than a colorable claim of injury; a party ordinarily establishes standing by allegations of injury.

**[6] Action 13 ⛭13**
13k13 Most Cited Cases
Standing exists to attempt to vindicate arguably protected interests.

**[7] Action 13 ⛭13**
13k13 Most Cited Cases
Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved.

**[8] Action 13 ⛭13**
13k13 Most Cited Cases
The fundamental test for determining aggrievement for purposes of standing encompasses a well-settled twofold determination; first, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in the subject matter of the challenged action, as distinguished from a general interest, such as is the concern of all members of the community as a whole; second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the challenged action.

**[9] Corporations 101 ⛭207.5**
101k207.5 Most Cited Cases

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

challenged is a proper party to request an adjudication of the issue.... Standing requires no more than a colorable claim of injury; a [party] ordinarily establishes ... standing by allegations of injury. Similarly, standing exists to attempt to vindicate arguably protected interests....

> FN5. We raise this issue of standing sua sponte as it implicates our subject matter jurisdiction. See, e.g., _Ardmare Construction Co. v. Freedman,_ 191 Conn. 497, 498 n. 4, 467 A.2d 674 (1983).

[7] [8] "Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved.... The fundamental test for **461** determining aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the subject matter of the challenged action], as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action].... Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest ... has been adversely affected." (Citations omitted; internal quotation marks omitted.) _AvalonBay Communities, Inc. v. Orange,_ 256 Conn. 557, 567-68, 775 A.2d 284 (2001).

[9] "Since at least the middle of the [nineteenth] century, it has been accepted in this country that the law should permit shareholders to sue derivatively on their corporation's behalf under appropriate conditions.... [I]t is axiomatic that a claim of injury, the basis of which is a wrong to the corporation, must be brought in a derivative suit, with the plaintiff proceeding secondarily, deriving his rights from the corporation which is alleged to have been wronged." (Citation omitted; internal quotation marks omitted.) _Fink v. Golenbock,_ 238 Conn. 183, 200, 680 A.2d 1243 (1996).

[10] "[I]n order for a shareholder to bring a direct or personal action against the corporation or other shareholders, that shareholder must show an injury that is separate and distinct from that suffered by any other shareholder or by the corporation." _Id.,_ at 201, 680 A.2d 1243. It is commonly understood that "[a] shareholder-even the sole shareholder-does not have standing to assert claims alleging wrongs to the corporation." _Jones v. Niagara Frontier Transportation Authority,_ 836 F.2d 731, 736 **462**

2d Cir.1987), cert. denied, 488 U.S. 825, 109 S.Ct. 74, 102 L.Ed.2d 50 (1988).

[11] We conclude, therefore, that Smith and Tartagni lacked standing to bring this action in their individual capacities because the allegations in the plaintiffs' complaint, if true, demonstrate that Lectron was harmed, but that no specific shareholder sustained an injury separate and distinct from that suffered by any **595** other shareholder or by the corporation. Accordingly, the individual claims of Smith and Tartagni must be dismissed.

II

[12] [13] The defendants' first claim on appeal involves the trial court's determination that the plaintiffs were entitled to compensatory damages. The trial court's award of compensatory damages was based on its conclusion that the defendants had violated the common-law theory of misappropriation of trade secrets, which is codified in Connecticut's Uniform Trade Secrets Act, the common-law theory of misappropriation of property, and CUTPA. FN6 As a threshold matter, we note that a trial court's findings of fact will be reversed only if they are clearly erroneous. E.g., _Tarullo v. Inland Wetlands & Watercourses Commission,_ 263 Conn. 572, 581, 821 A.2d 734 (2003).

> FN6. We note that "[t]he entry of a default constitutes an admission by the defendant of the truth of the facts alleged in the complaint." _DeBlasio v. Aetna Life & Casualty Co.,_ 186 Conn. 398, 400, 441 A.2d 838 (1982). Thus, the defendants cannot challenge the determination of liability in the present case because liability was deemed to be established conclusively. Accordingly, our review of the defendants' claims is limited to whether the trial court properly awarded damages and whether the amount of damages awarded was proper.

The defendants claim that, to the extent that the trial court's award of damages was based on its conclusion that the defendants had violated the Uniform Trade Secrets Act, it was improper because there was insufficient**463** evidence to establish that Lectron possessed protected information about customers, pricing schemes and processes and treated it as proprietary information. FN7 Thus, the defendants contend that the information at issue did not constitute trade secrets. We disagree.

> FN7. We note that the plaintiffs did not

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

allege in their complaint that the defendants had violated the Uniform Trade Secrets Act. The defendants do not claim on appeal, however, that the trial court's award of damages was improper inasmuch as the plaintiffs failed to allege a violation of the Uniform Trade Secrets Act in their complaint. See Practice Book § 10-3.

General Statutes § 35-51(d) defines a trade secret as "information, including a formula, pattern, compilation, program, device, method, technique, process, drawing, cost data or *customer list* that: (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." (Emphasis added.)

[14] The trial court found that Lectron protected information about its suppliers, customers, pricing schemes and processes, and treated it as proprietary information. The court concluded that the defendants improperly had appropriated this information. Our review of the transcript from the damages hearing reveals that there was sufficient evidence to support the trial court's factual findings. At the damages hearing, for example, Sorrentino specifically was asked, "[D]id you keep your customers-who your customers were and your pricing scheme, and things of that nature-did Lectron ... treat that information as confidential?" Sorrentino responded, "Yes, we did." Sorrentino also testified that Bettina Snyder and Donald Snyder, among others, were aware that such information was confidential. Thus, **\*464** there was sufficient evidence to permit **\*\*596** the trial court to award damages under the Uniform Trade Secrets Act.

[15] The defendants claim, however, that there was no evidence to support a finding that the defendants actually misappropriated trade secrets or nontrade secret property. We disagree. General Statutes § 35-51(b) defines misappropriation as: "(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (2) disclosure or use of a trade secret of another without express or implied consent by a person who (A) used improper means to acquire knowledge of the trade secret; or (B) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was (i) derived from or through a person who had utilized improper means to acquire it; (ii) acquired under circumstances giving rise to a duty to

maintain its secrecy or limit its use, including but not limited to disclosures made under section 1-210, sections 31-40j to 31-40p, inclusive, or subsection (c) of section 12-62; or (iii) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or (C) before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake."

The trial court's determination that the defendants misappropriated trade secrets was based on its finding that the defendants had "solicited [Lectron's] customers and diverted them to the defendants' new business venture [namely, CS Industries]." First, the allegations of the plaintiffs' complaint support the trial court's factual determination, and it is well settled that "[t]he entry of a default constitutes an admission by the defendant of the truth of the facts alleged in the complaint." *DeBlasio v. Aetna Life & Casualty Co., 186 Conn. 398, 400, 441 A.2d 838 (1982).* The plaintiffs alleged in their complaint,**\*465** for example, that the defendants usurped Lectron's customers. Second, a review of the transcript from the hearing in damages further demonstrates that there was sufficient evidence to support the trial court's factual findings. There was testimony that the defendants had solicited Lectron's customers and diverted them to the defendants' new business venture.

[16] The trial court also determined that the defendants had violated the common-law theory of misappropriation of nontrade secret property by using fraudulent means to misappropriate Lectron's most productive and efficient machine. Similarly, the trial court's determination is supported by the pleadings and by evidence adduced at the hearing in damages. The plaintiffs alleged in their complaint that several of the defendants arranged to remove an electron beam welder from the premises of Lectron so that it could be reinstalled at the premises of CS Industries. There was also testimony at the damages hearing that the defendants started a competing business, namely, CS Industries, and utilized fraudulent means to misappropriate the plaintiffs' most productive and efficient machine.

The allegations contained in the plaintiffs' complaint, which are deemed to be established conclusively, and the evidence adduced at the damages hearing, therefore, demonstrate that there was ample support for the trial court's determination that Lectron was entitled to damages under the common law and the Uniform Trade Secrets Act. FN8

> FN8. We note that the defendants' only challenge in connection with the trial court's

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

267 Conn. 456
267 Conn. 456, 839 A.2d 589
(Cite as: 267 Conn. 456)

award of damages under CUTPA is to its award of punitive damages, which we discuss in part III of this opinion.

## **597 III

[17] The defendants also claim on appeal that, even if the trial court properly determined that the plaintiffs were entitled to damages, the amount of compensatory damages,*466 punitive damages and attorney's fees that the trial court actually awarded was improper. We first note that a trial court is vested with "broad discretion in determining whether damages are appropriate.... Its decision will not be disturbed ... absent a clear abuse of discretion." (Citation omitted; internal quotation marks omitted.) *Elm City Cheese Co. v. Federico,* 251 Conn. 59, 90, 752 A.2d 1037 (1999).

### A

First, the defendants claim that the trial court's award of compensatory damages was improper. The defendants claim that the trial court improperly calculated compensatory damages because it: (1) failed to consider that the individual shareholder plaintiffs did not have a 100 percent interest in Lectron, a fact that should have served to reduce the compensatory damages award; and (2) failed to deduct the proper amount of the proceeds from the sale of various pieces of Lectron's equipment.

On the basis of our earlier conclusion that the individual shareholder plaintiffs lack standing in the present matter; see part I of this opinion; we need not address the first part of the defendants' claim. This issue is moot in light of our decision to direct the trial court to render judgment dismissing the action as to Smith and Tartagni.

In support of the second part of their claim regarding compensatory damages, the defendants assert that the trial court improperly reduced the compensatory damages award by $15,000 instead of $127,000 to reflect the proceeds of the sale of Lectron's equipment. The defendants contend that the trial court failed to consider evidence adduced at the damages hearing that Lectron received $127,000 for the sale of the equipment.

[18] Although the defendants correctly note that Sorrentino testified at the damages hearing regarding the proceeds*467 from the sale of Lectron's equipment, Sorrentino's testimony was vague at best. For example, when Sorrentino was questioned about the sale proceeds, he was unable to recall how much money Lectron had received with any degree of precision or certainty. Moreover, our review of the

record reveals no supporting documentation regarding the sale proceeds. It was within the trial court's discretion, therefore, to weigh Sorrentino's testimony and to decide whether to rely on it in its calculation of compensatory damages. See *Bieluch v. Bieluch,* 199 Conn. 550, 555-56, 509 A.2d 8 (1986).

Moreover, because the defendants elected not to file a motion for articulation to illuminate further the basis for the compensatory damages award, this court can only speculate as to how and why the trial court arrived at that sum. We repeatedly have stated that it is the appellant's responsibility to provide an adequate record for review. E.g., *Walton v. New Hartford,* 223 Conn. 155, 164-65, 612 A.2d 1153 (1992). Thus, in light of the discretion afforded the trial court in determining the amount of damages to be awarded and in crediting or discrediting the testimony of witnesses, we conclude that the trial court's award of compensatory damages was proper. See *Bieluch v. Bieluch,* supra, 199 Conn. at 555-56, 509 A.2d 8.

## **598 B

[19] The defendants next contend that the trial court improperly awarded punitive damages under CUTPA because an award of such damages under CUTPA requires evidence that the defendants demonstrated a reckless indifference to the rights of the plaintiffs. In the present case, the trial court's finding of reckless indifference was premised on the defendants' breach *468 of fiduciary duties. FN9 The defendants claim that the only defendant that was alleged to have breached a fiduciary duty was Charles Snyder, who is no longer a party to this action. Thus, the defendants claim that the trial court improperly awarded punitive damages under CUTPA against the remaining defendants in this action because there was no direct or circumstantial evidence to establish that they demonstrated a reckless indifference to the plaintiffs' rights. We disagree.

> FN9. The trial court cited *Blum, Shapiro & Co. v. Searles & Houser, LLC,* Superior Court, judicial district of Hartford, Docket No. CV-99-0586283-S (August 11, 1999), for the proposition that a breach of fiduciary duties may constitute reckless indifference.

We have stated that when "two or more persons unite in an act which constitutes a wrong to another, intending at the time to commit it, or in doing it under circumstances which fairly charge them with intending the consequences which follow, they incur

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

267 Conn. 456
267 Conn. 456, 839 A.2d 589
**(Cite as: 267 Conn. 456)**

Page 8

a joint and several liability for the acts of each and all of the joint participants.... Whe[n] ... the evidence supports the conclusion that there was concerted action, each participant is ... liable for the entire injury caused by the concerted action." (Citation omitted; internal quotation marks omitted.) *Lamb v. Peck,* 183 Conn. 470, 472-73, 441 A.2d 14 (1981). In their complaint, the plaintiffs alleged that Charles Snyder breached his fiduciary duties to Lectron as an officer and director. The plaintiffs further alleged in their complaint that the remaining defendants conspired with Charles Snyder in the breach of his fiduciary duties. As we have discussed previously in this opinion, the entry of the default judgment conclusively established the facts alleged in the plaintiffs' complaint. Our decision in *Lamb* and the allegations in the plaintiffs' complaint, therefore, inform our conclusion that the remaining defendants in the present case are jointly and severally liable for Charles Snyder's breach of his *469 fiduciary duties. We conclude, therefore, that the trial court did not abuse its discretion in awarding $40,000 in punitive damages under CUTPA.

C

The defendants next claim that the trial court improperly awarded $40,000 in punitive damages under the common law because the plaintiffs had failed to plead punitive damages, which the defendants contend is required under Connecticut law. See *Associated Investment Co. Ltd. Partnership v. Williams Associates IV,* 230 Conn. 148, 161, n. 16, 645 A.2d 505 (1994). The defendants claim alternatively that, even if it is assumed that an award of common-law punitive damages is merited, the award was improper because common-law punitive damages are limited to the plaintiffs' litigation expenses, and there was no evidence in the present case concerning the plaintiffs' litigation expenses. See *Waterbury Petroleum Products, Inc. v. Canaan Oil & Fuel Co.,* 193 Conn. 208, 236, 238, 477 A.2d 988 (1984) (common-law punitive damages limited to expense of litigation less taxable costs).

[20] Our review of the trial court's memorandum of decision reveals, however, that the trial court awarded punitive damages under the Uniform Trade Secrets Act **599 rather than under common law. The punitive damages provision of that act, namely, General Statutes § 35-53(b), provides: "In any action brought pursuant to subsection (a) of this section, FN10 if the court finds *wilful and malicious misappropriation,* the court may award punitive damages in an amount not exceeding twice any award made under subsection (a) and may award

reasonable attorney's fees to the prevailing party." (Emphasis added.) The trial court specifically quoted § 35-53(b) in awarding punitive damages on the basis *470 of its finding that the defendants' conduct was wilful and malicious. The only logical interpretation of the trial court's decision, therefore, is that it awarded punitive damages under § 35-53(b). The defendants do not dispute the trial court's finding that their conduct was wilful and malicious. We conclude, therefore, that the trial court did not abuse its discretion in awarding $40,000 in punitive damages under § 35-53(b) inasmuch as the award did not exceed twice the amount of the award of compensatory damages. See General Statutes § 35-53(b).

> FN10. Subsection (a) of § 35-53 authorizes an award of damages for the "misappropriation" of trade secrets as described in subsection (b) of § 35-51.

D

[21] Finally, the defendants claim that the trial court abused its discretion in awarding $20,000 in attorney's fees. Specifically, the defendants claim that the award of attorney's fees was improper because no evidence was presented to establish the reasonableness, nature and extent of the attorney's fees incurred by the plaintiffs during the course of the litigation. We reject the defendants' claim under the particular circumstances of this case.

The trial court was vested with discretion to award reasonable attorney's fees under both CUTPA and the Uniform Trade Secrets Act. General Statutes § 42-110g (d) provides in relevant part that, in any action in which a person alleges damages resulting from an unfair trade practice prohibited by § 42-110b of CUTPA, "the court may award, to the plaintiff, in addition to the relief provided in this section, *costs and reasonable attorneys' fees* based on the work reasonably performed by an attorney and not on the amount of recovery...." (Emphasis added.) Additionally, General Statutes § 35-53(b), one of the provisions comprising Connecticut's Uniform Trade Secrets Act, provides in relevant part: "[I]f the court finds wilful and malicious misappropriation, the court may award punitive damages in an *471 amount not exceeding twice any award [of compensatory damages] *and may award reasonable attorney's fees* to the prevailing party." (Emphasis added.)

[22] Notwithstanding the conclusive establishment of liability occasioned by the default of the defendants in the present case, "the plaintiff must still prove ... how much of the judgment prayed for in the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

complaint he is entitled to receive." FN11 (Internal quotation marks omitted.) _DeBlasio v. Aetna Life & Casualty Co.,_ supra, 186 Conn. at 401, 441 A.2d 838. Thus, although Lectron was entitled to a discretionary award of reasonable attorney's fees in light of the defendants' liability, it was incumbent upon Lectron to prove the amount of fees to which it was entitled upon the entry of the default judgment.

> FN11. At the very least, a default judgment entitles the plaintiff to nominal damages. _DeBlasio v. Aetna Life & Casualty Co.,_ supra, 186 Conn. at 401, 441 A.2d 838.

We long have held that there is an "undisputed requirement that the reasonableness of attorney's fees and costs must be **600 proven by an _appropriate evidentiary showing._" (Emphasis added.) _Hartford Electric Light Co. v. Tucker,_ 183 Conn. 85, 91, 438 A.2d 828, cert. denied, 454 U.S. 837, 102 S.Ct. 143, 70 L.Ed.2d 118 (1981) ; accord _Barco Auto Leasing Corp. v. House,_ 202 Conn. 106, 121, 520 A.2d 162 (1987) ; see also _Appliances, Inc. v. Yost,_ 186 Conn. 673, 680-81, 443 A.2d 486 (1982) ; _Stelco Industries, Inc. v. Cohen,_ 182 Conn. 561, 567-68, 438 A.2d 759 (1980). We also have noted that "courts have a general knowledge of what would be reasonable compensation for services which are _fairly stated and described_ "; (emphasis added; internal quotation marks omitted) _Shapero v. Mercede,_ 262 Conn. 1, 9, 808 A.2d 666 (2002); and that "[c]ourts may rely on their general knowledge of what has occurred at the proceedings before them to supply evidence in support of an award of attorney's fees." (Internal quotation marks omitted.) ***472**_Andrews v. Gorby,_ 237 Conn. 12, 24, 675 A.2d 449 (1996). Even though a court may employ its own general knowledge in assessing the reasonableness of a claim for attorney's fees, we also have emphasized that "no award for an attorney's fee may be made when the evidence is insufficient." (Internal quotation marks omitted.) _Appliances, Inc. v. Yost,_ supra, at 680, 443 A.2d 486.
The weight of authority indicates that more than the trial court's mere general knowledge is required for an award of attorney's fees. See, e.g., _Miller v. Kirshner,_ 225 Conn. 185, 201, 621 A.2d 1326 (1993) ; _Barco Auto Leasing Corp. v. House,_ supra, 202 Conn. at 120-21, 520 A.2d 162; _Appliances, Inc. v. Yost,_ supra, 186 Conn. at 681, 443 A.2d 486; _Stelco Industries, Inc. v. Cohen,_ supra, 182 Conn. at 567-68, 438 A.2d 759; _Lebowitz v. McPike,_ 151 Conn. 566, 568, 201 A.2d 469 (1964). But see _Bizzoco v. Chinitz,_ 193 Conn. 304, 310-11, 476 A.2d 572 (1984).

For example, in _Appliances, Inc. v. Yost,_ supra, 186 Conn. at 679, 443 A.2d 486, the terms of a promissory note provided for an award of reasonable attorney's fees. The trial court nevertheless determined that the parties had failed to provide sufficient evidence for an award of attorney's fees. _Id._ We disagreed, concluding that "some evidentiary material did exist for the court to consider on that issue"; _id.,_ at 681, 443 A.2d 486; including a supplemental brief filed by the plaintiff in which the plaintiff itemized the attorney's services. _Id._ We noted that "[t]hese materials, _combined with_ the court's own general knowledge, could serve to provide a basis for the court to decide the right to and amount of reasonable attorney's fees." (Emphasis added; internal quotation marks omitted.) _Id._
In _Piantedosi v. Floridia,_ 186 Conn. 275, 440 A.2d 977 (1982), the defendant claimed that the trial court improperly awarded attorney's fees because it did not base its award on "factual evidence in the transcript, such as expert witness testimony." _Id.,_ at 279, 440 A.2d 977. We rejected the defendant's contention, concluding that the trial ***473** court properly considered evidence that "twenty-five hours, at $60 per hour, had been expended on the case before trial." _Id._ We noted that a party need not present expert testimony regarding attorney's fees and reaffirmed our previous holdings that "courts have a general knowledge of what would be reasonable compensation for services which are _fairly stated and described._" (Emphasis added; internal quotation marks omitted.) _Id._
Moreover, in _Hartford Electric Light Co. v. Tucker,_ supra, 183 Conn. at 86-87, 438 A.2d 828, the defendant appealed from the judgment of the trial court awarding, inter alia, attorney's fees to the plaintiff. The defendant challenged the constitutionality of a statute that allowed for the plaintiff's **601 recovery of "reasonable attorney's fees and costs...." (Internal quotation marks omitted.) _Id.,_ at 91, 438 A.2d 828. We rejected the defendant's contention that the statute authorizing the plaintiff's recovery of attorney's fees was "devoid of standards," concluding that "[t]he defendant's constitutional protection from excessive awards [was] to be found in the _undisputed requirement that the reasonableness of attorney's fees and costs must be proven by an appropriate evidentiary showing._" (Emphasis added.) _Id._
In _Miller v. Kirshner,_ supra, 225 Conn. at 199, 621 A.2d 1326, the defendant, Hal Kirshner, claimed that there was insufficient evidence to support an award of attorney's fees. "During the trial on financial issues, the plaintiff [Mary Miller] submitted a sworn affidavit indicating that she owed counsel $20,000 at

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the time of trial and attached a supporting itemization. [Kirshner] argued that [Miller] was barred from seeking attorney's fees because she had failed to produce expert testimony that the fees were reasonable.    In its memorandum of decision on financial issues, the trial court awarded [Miller] $7000 in attorney's fees.    The court stated that ... [it had] a general knowledge of what would be a reasonable fee under **\*474** the facts, circumstances and workload of th[e] case.    It [found that] amount to be fair and reasonable.

"[On appeal, Kirshner] claim[ed] that the trial court improperly [had] awarded attorney's fees without conducting a hearing to consider evidence from an expert witness with respect to the reasonableness of the hours and monetary amount of the fees requested. [Kirshner did] not claim that he was not permitted to introduce evidence regarding the unreasonableness of the fees requested, but that [Miller had] failed to produce evidence, through an expert witness, of their reasonableness. [Kirshner] argue[d], therefore, that without a proper evidentiary foundation, an award of attorney's fees could not be made."    (Internal quotation marks omitted.) *Id.,* at 199-200, 621 A.2d 1326.

We disagreed with Kirshner and concluded that "[t]he trial court properly relied on the financial affidavit before it *and* on its general knowledge and involvement with the entire trial to ascertain a reasonable attorney's fee." (Emphasis added.) *Id.,* at 201, 621 A.2d 1326.    Thus, the trial court possessed documentary evidence regarding attorney's fees and based its award on that evidence in addition to its own general knowledge of what constituted a reasonable attorney's fee. See *id.*

In *Shapero v. Mercede,* 262 Conn. 1, 808 A.2d 666 (2002), we reviewed the Appellate Court's conclusion that there was insufficient evidence upon which to base a finding of attorney's fees because the plaintiff attorney, Paul D. Shapero, had produced no evidence to establish either his rate of compensation or the prevailing rates in the legal community.    We stated that "[t]he Appellate Court did not consider, however, whether there was other evidence that could have supported the fee award." *Id.,* at 6, 808 A.2d 666.

Shapero testified that he had worked 100 hours on the matter. *Id.,* at 3, 808 A.2d 666. "[T]he referee based her finding that **\*475** the appropriate hourly rate was $275, rather than $500 as requested by [Shapero], upon other subordinate findings relevant to the value of [Shapero's] services.    With regard to [Shapero's] experience and reputation, the referee noted that [t]he fact finder recognizes that the value added choice of [having Shapero] ... handle the [client's] tax matters

involved the recognition of [Shapero's] notable service as probate judge and as corporation counsel with the city of Stamford and other public boards and agencies and his lifelong **\*\*602** service to the community and to the legal profession. [The referee] also found that [t]he arguments were complicated by the fact that a claim of environmental contamination was involved that could [have] trigger[ed] a broader base for application of tax relief, and that [t]here [was] an element of novelty to [Shapero's] presentation to the tax assessor regarding the assessment method and the list year in question....

"The referee's evidentiary findings with regard to [Shapero's] experience and reputation, and the novelty and complexity of the legal issues addressed in the course of his work on behalf of [his client], ha[d] not been challenged and [were] therefore binding on this court." (Internal quotation marks omitted.) *Id.,* at 8-9, 808 A.2d 666.

In *Shapero,* we concluded the court's "general knowledge [of what constitutes a reasonable attorney's fee] and the referee's unchallenged findings relevant to the value of the plaintiff's services provided sufficient support for the challenged finding that $275 per hour was an appropriate measure of the value of those services." *Id.,* at 10, 808 A.2d 666. Thus, as in numerous other cases, there was additional evidence in *Shapero* to support the trial court's award of attorney's fees.

In *Shapero,* we distinguished cases that the Appellate Court had relied on in reversing the trial court's award of attorney's fees.    See *id.,* at 6-7, n. 3, 808 A.2d 666.    We noted that "[t]he **\*476** Appellate Court cite[d] several cases in support of its conclusion that [n]o award of attorney's fees ... may be made when the evidence on which to base the award is insufficient.... *Although this is a correct statement of the law,* the cases cited are distinguishable.... Specifically, in none of the cases cited has this court or the Appellate Court ruled that competent evidence regarding the value of legal services was introduced but that it did not suffice to support a finding regarding that value.    Indeed, in the first case cited by the Appellate Court [namely, *Appliances, Inc. v. Yost,* supra, 186 Conn. at 673, 443 A.2d 486], we reversed the ruling of the trial court and held that *a brief in which counsel's services were itemized, when taken with the court's own general knowledge, constituted sufficient evidence from which to determine the amount of reasonable attorney's fees.    [Id.,* at 681, 443 A.2d 486].    Therefore, in *Appliances, Inc.,* we required neither evidence regarding the rate ordinarily charged by the plaintiff in that case nor evidence of prevailing rates in the community.    In one of the other cases cited by

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

267 Conn. 456
267 Conn. 456, 839 A.2d 589
(Cite as: 267 Conn. 456)

the Appellate Court ... *no evidence of the value of the services whatsoever had been introduced. Lebowitz v. McPike,* [151 Conn. 566, 568, 201 A.2d 469 (1964)]. In another [namely, *City Savings Bank of Bridgeport v. Miko,* 1 Conn.App. 30, 467 A.2d 929 (1983)], the Appellate Court determined that the awarding of attorney's fees would be improper because the post-deficiency-judgment services for which the fees were sought had not yet been performed, unlike those in question in [Shapero], and might never be performed in the future. *[Id., at 38, 467 A.2d 929].* That court ruled that [p]ermitting an award of legal fees depends upon a factual finding concerning work already performed. *Id.* In the remaining case cited by the Appellate Court [namely, *Gruskay v. Simenauskas,* 107 Conn. 380, 140 A. 724 (1928)], the only evidence of the value of the attorney's services was in the form of opinion testimony    *477 provided by three witnesses in response to a hypothetical question regarding the attorney's prior experience. *[Id., at 384-85, 140 A. 724].* An objection to the question was made on the grounds that it did not accurately reflect the actual level of experience of the attorney seeking compensation. **603*Id., at 384, 140 A. 724.* This court concluded that the trial court improperly had overruled this objection ... and held that [w]ith the hypothetical question excluded, there was *no sufficient evidence before the court upon which to predicate a conclusion regarding the value of the services. Id., at 387, 140 A. 724.* [In Shapero] ... there [was] such evidence." (Citations omitted; emphasis added; internal quotation marks omitted.) *Shapero v. Mercede,* supra, 262 Conn. at 6-7, n. 3, 808 A.2d 666.

[23] Thus, as our case law demonstrates, to support an award of attorney's fees, there must be a clearly stated and described factual predicate for the fees sought, apart from the trial court's general knowledge of what constitutes a reasonable fee. Although we have been careful not to limit the contours of what particular factual showing may suffice, our case law demonstrates that a threshold evidentiary showing is a prerequisite to an award of attorney's fees. FN12

FN12. In *Lebowitz v. McPike,* supra, 151 Conn. at 567-68, 201 A.2d 469, we held that the plaintiff, who had brought an action to collect on a note executed by the defendants, was not entitled to attorney's fees, after a trial on the issues, despite a term in the note providing for such fees. We concluded that "[t]he judgment did not include any allowance for attorneys' fees, *since no evidence was introduced concerning them.*"

(Emphasis added.) *Id., at 568, 201 A.2d 469.*

Notwithstanding the existence of numerous cases establishing this evidentiary burden, some confusion exists in our case law regarding the nature and extent of this evidentiary burden. See *Resurreccion v. Normandy Heights, LLC,* 76 Conn.App. 642, 650, 820 A.2d 1116 (acknowledging confusion relating to evidentiary burdens associated with awards of attorney's fees), cert. denied, 264 Conn. 917, 826 A.2d 1159 (2003).

*478 The dissent relies on our holding in *Bizzoco v. Chinitz,* supra, 193 Conn. at 304, 476 A.2d 572, to support its conclusion that the trial court's general knowledge of the file, per se, is sufficient for an award of attorney's fees. In *Bizzoco,* the defendant, Leon Chinitz, appealed from the judgment of the trial court awarding the plaintiff, Elizabeth Bizzoco, attorney's fees. See *id., at 306-307, 476 A.2d 572.* The trial court awarded Bizzoco attorney's fees pursuant to the explicit provisions of a promissory note authorizing an award of reasonable fees. *Id., at 310, 476 A.2d 572.* In as much as Bizzoco had offered no additional evidence regarding attorney's fees at trial apart from the terms of the promissory note, Chinitz claimed that the evidence was insufficient to sustain an award of attorney's fees. See *id.* We disagreed with Chinitz and held that "courts may rely on their general knowledge of what has occurred at the proceedings before them to supply evidence in support of an award of attorney's fees." *Id.* We noted that "the trial court knew that [Bizzoco's] counsel had taken a lengthy deposition, had engaged in a two-day trial, and had prepared a post-trial brief." *Id., at 310-11, 476 A.2d 572.* We thus concluded that "[t]he [trial] court was in a position to evaluate the complexity of the issues presented and the skill with which counsel had dealt with these issues. Th[e] record was sufficient to support the award made by the court." *Id., at 311, 476 A.2d 572.*

We acknowledge that the dissent's interpretation of our holding in *Bizzoco,* namely, that the trial court's general knowledge of the reasonableness of the attorney's fees as well as the court's access to the file and knowledge of the proceedings before it was alone sufficient to warrant an award of attorney's fees, is a reasonable interpretation of that case. Nevertheless, we believe, **604 on the basis of the weight and persuasiveness of our case law on this issue, decided both before and after *Bizzoco,* that the trial court's general knowledge of the file in a particular case, by itself, is an insufficient *479 foundation on which to base an award of attorney's fees. Our adherence to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the principle set forth in *Bizzoco* would require us to read the "fairly stated and described" language out of our long-standing precedent. (Internal quotation marks omitted.) *Shapero v. Mercede*, supra, 262 Conn. at 9, 808 A.2d 666. We decline to do so. Furthermore, we note that, in support of our holding in *Bizzoco*, we cited to *Appliances, Inc.*, and *Piantedosi*; *Bizzoco v. Chinitz*, supra, 193 Conn. at 310, 476 A.2d 572; two cases that clearly emphasize the necessity of having an evidentiary foundation, independent of the trial court's general knowledge, upon which to base an award of attorney's fees. See *Appliances, Inc. v. Yost*, supra, 186 Conn. at 681, 443 A.2d 486; *Piantedosi v. Floridia*, supra, 186 Conn. at 279, 440 A.2d 977.

[24] Accordingly, when a court is presented with a claim for attorney's fees, the proponent must present to the court at the time of trial or, in the case of a default judgment, at the hearing in damages, a statement of the fees requested and a description of services rendered. FN13 Such a rule leaves no doubt about the burden on the party claiming attorney's fees and affords the opposing party an opportunity to challenge the amount requested at the appropriate time. FN14

> FN13. Of course, courts must enforce statutory limits on attorney's fees; e.g., General Statutes § 42-150aa (b); and recognize self-executing terms of contractual provisions that call for an award of a set percentage of attorney's fees upon the occurrence of a certain event. Cf. *Stelco Industries, Inc. v. Cohen*, supra, 182 Conn. at 567-68, 438 A.2d 759.

> FN14. We have recognized the right of parties, at trial, to litigate fully the reasonableness of the fees requested. See *Barco Auto Leasing Corp. v. House*, supra, 202 Conn. at 121, 520 A.2d 162. In *Barco Auto Leasing Corp.*, the defendants sought to introduce into evidence affidavits in support of their request for attorney's fees. *Id.* The plaintiff objected to the admission of one affidavit and claimed that the defendants were required to offer expert testimony to establish the value of reasonable fees. *Id.* The trial court did not allow the admission of the affidavits in evidence but, instead, included them in the case file. *Id.* Thereafter, the court directed the parties to raise any claims or objections to the award of attorney's fees in their briefs. *Id.* Upon these facts, we held that the court

"denied the [party against whom attorney's fees were sought] the undisputed right to litigate fully the reasonableness of the attorney's fees sought...." *Id.*

We note that our conclusion in *Barco Auto Leasing Corp.*, namely, that the trial court improperly denied the party against whom attorney's fees were sought the opportunity to litigate fully the issue, was premised upon factual circumstances that differ from those in the present case. In *Barco Auto Leasing Corp.*, the party against whom attorney's fees were sought affirmatively objected to the submission of evidence in support of the request for attorney's fees. *Id.* In the present case, however, upon notice of the plaintiffs' request for attorney's fees, the defendants did not object or otherwise respond to that request. Accordingly, the trial court in the present case did not deny the defendants any opportunity to litigate fully the issue of attorney's fees.

[25] **\*480** Our holding today does not limit the trial court's ability to assess the reasonableness of the fees requested using any number of factors, including its general knowledge of the case, sworn affidavits or other testimony, itemized bills, and the like. As we recognized in *Piantedosi*, "[t]he value [of reasonable attorney's fees] is based upon many considerations." (Internal quotation marks omitted.) *Piantedosi v. Floridia*, supra, 186 Conn. at 279, 440 A.2d 977, quoting *Hoenig v. Lubetkin*, 137 Conn. at 516, 524, 79 A.2d 278 (1951).

**\*\*605** In addition, as a matter of good policy, our holding today establishes a paradigm within which all parties must act when pursuing a claim for attorney's fees. Perhaps, even more importantly, our holding eliminates the undesirable burden imposed upon the courts when a party seeks an award of attorney's fees predicated solely upon a bare request for such fees. Parties must supply the court with a description of the nature and extent of the fees sought, to which the court may apply its knowledge and experience in determining the reasonableness of the fees requested. Under the circumstances of this case, however, we affirm the trial court's award of $20,000. We reach this conclusion because the defendants did not oppose or otherwise take any action in response to the plaintiffs' request for $25,000 in fees in their post-damages hearing brief. FN15 Although the proponent bears the burden of **\*481** furnishing evidence of attorney's fees at the appropriate time, once the plaintiffs in this case did make such a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

267 Conn. 456
267 Conn. 456, 839 A.2d 589
(Cite as: 267 Conn. 456)

request, the defendants should have objected or at least responded to that request. Had the defendants demonstrated any interest in objecting to the plaintiffs' request for attorney's fees, the trial court would have been obligated to grant the defendants an opportunity to be heard. See *Barco Auto Leasing Corp. v. House,* supra, 202 Conn. at 121, 520 A.2d 162; footnote 14 of this opinion. Accordingly, although a bare request for attorney's fees, without more, ordinarily would not suffice under the clarifying rule we announce today, we conclude that a reversal of the award in the present case is not justified in light of the defendants' failure, prior to this appeal, to interpose *any objection whatsoever* to the plaintiffs' request for attorney's fees. In other words, the defendants, in failing to object to the plaintiffs' request for attorney's fees, effectively acquiesced in that request, and, consequently, they now will not be heard to complain about that request. FN16

FN15. See footnote 14 of this opinion.

FN16. We underscore the fact that the defendants do not challenge the reasonableness of the amount that the trial court awarded in attorney's fees.

The judgment is reversed with respect to the trial court's award of damages and attorney's fees to the plaintiffs Patricia Smith and Carol Tartagni and the case is remanded to the trial court with direction to render judgment dismissing the action as to those two plaintiffs. The judgment is otherwise affirmed.

In this opinion SULLIVAN , C.J., and NORCOTT and PALMER, Js., concurred.

BORDEN, J., concurring and dissenting.
I agree with, and join, all of the majority opinion, except part III D. In that part, the majority (1) announces a new rule governing the awarding of attorney's fees, but (2) declines to apply that rule to the present case, and (3) *482 therefore affirms an award that, by its own reasoning, was not adequately supported by the record. I would conclude that, in accord with our existing and well considered case law, no abuse of discretion occurred in the award of attorney's fees and that, furthermore, no new rule such as that articulated by the majority is necessary. Accordingly, I would affirm the award of attorney's fees to the plaintiff corporation and its shareholders, and I dissent from the majority's new procedural requirement for such awards.

I

I first address the award of attorney's fees, and explain why I think it was properly**606 made, both procedurally and substantively, under our existing case law. Although the defendants, former employees of the plaintiff corporation, have been defaulted and the trial was limited to a hearing in damages, the record of this case, including the trial court's factual findings and the defendants' claims in both the trial court and this court, demonstrates that the hearing in damages involved claims going to liability as well as damages. As a result of that contested hearing in damages, over which the trial court presided, the court awarded the plaintiffs: (1) $235,000 in compensatory damages under both the Connecticut Unfair Trade Practices Act (CUTPA) and the Connecticut Uniform Trade Secrets Act (trade secrets act); (2) $40,000 in punitive damages under the trade secrets act; (3) $40,000 in punitive damages under CUTPA; and (4) $20,000 in attorney's fees. FN1

FN1. This award was a reduction from the $25,000 requested by the plaintiffs.

I agree with the general standard set forth by the majority for the award of attorney's fees. "[W]e have repeatedly held that courts have a general knowledge of what would be reasonable compensation for services which are fairly stated and described.... *Piantedosi v. Floridia,* 186 Conn. 275, 279, 440 A.2d 977 (1982). *483 We have applied this principle with regard to attorney's fees. See, e.g., *Andrews v. Gorby,* [237 Conn. 12, 24, 675 A.2d 449 (1996) ]; *Appliances, Inc. v. Yost,* [186 Conn. 673, 681, 443 A.2d 486 (1982)]." (Internal quotation marks omitted.) *Shapero v. Mercede,* 262 Conn. 1, 9-10, 808 A.2d 666 (2002). More specifically, we have stated: "Time spent is but one factor in determining the reasonableness of an attorney's fee. FN2 Although the better practice is for an attorney ... to maintain time records, the failure to do so does not preclude the court from determining and awarding an attorney's fee.... *[C]ourts may rely on their general knowledge of what has occurred at the proceedings before them to supply evidence in support of an award of attorney's fees.... The court [is] in a position to evaluate the complexity of the issues presented and the skill with which counsel had dealt with these issues. Miller v. Kirshner,* 225 Conn. 185, 201, 621 A.2d 1326 (1993)." (Citation omitted; emphasis added; internal quotation marks omitted.) *Andrews v. Gorby,* supra, at 24, 675 A.2d 449; see also *Miller v. Kirshner,* supra, at 201, 621 A.2d 1326 (trial court properly relied on plaintiff's itemized

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

financial affidavit of what she owed counsel, "and on its general knowledge and involvement with the entire trial to ascertain a reasonable attorney's fee"); **\*484** *Bizzoco v. Chinitz,* 193 Conn. 304, 310-11, 476 A.2d 572 (1984) (award of attorney's fees sustained because "trial court **\*\*607** knew that the plaintiff's counsel had taken a lengthy deposition, had engaged in a two-day trial, and had prepared a post-trial brief ... [and] was in a position to evaluate the complexity of the issues presented and the skill with which counsel had dealt with [the] issues"); *Piantedosi v. Floridia,* supra, at 279, 440 A.2d 977 (court's discretion in award of attorney's fees need not "be based on factual evidence in the transcript"; trial court's "[awareness] of the activities of counsel during the course of ... trial," supported its valuation of reasonable attorney's fees). In addition, we explicitly have held that, even when the trial court that awarded attorney's fees was not the same court that presided over the rest of the case, it can employ its general knowledge of the value of attorneys' services performed in the case, and can estimate the amount of work involved from an examination of the pleadings in the file. *Shapero v. Mercede,* supra, at 9 n. 6, 808 A.2d 666; *Appliances, Inc. v. Yost,* supra, at 681 n. 5, 443 A.2d 486 (trial court had "entire file before it from which it could estimate the approximate number of hours devoted to the pleadings"). Applying these standards to the record in the present case, I would conclude that the trial court did not abuse its discretion in its award of attorney's fees.

> FN2. "Rule 1.5 of the Rules of Professional Conduct, entitled 'Fees,' provides in pertinent part: '(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
>
> " '(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> " '(2) The likelihood, if made known to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> " '(3) The fee customarily charged in the locality for similar legal services;
>
> " '(4) The amount involved and the results obtained;

> " '(5) The time limitations imposed by the client or by the circumstances;
>
> " '(6) The nature and length of the professional relationship with the client;
>
> " '(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> " '(8) Whether the fee is fixed or contingent....' " *Andrews v. Gorby,* supra, 237 Conn. at 24, n. 19, 675 A.2d 449.

First, the trial court had presided over the entire contested hearing in damages, resulting in a successful award of a total of $235,000 in compensatory damages, and $80,000 in punitive damages based on the defendants' reckless, willful and malicious conduct toward the plaintiffs. Thus, it had firsthand knowledge of the length, difficulty and complexity of that proceeding, as well as the degree of its success. In addition, immediately prior to the commencement of the hearing in damages, the very same trial court entertained the defendants' motion to open the very default that had led to the hearing in damages. In opposing the motion, **\*485** the plaintiffs' attorney gave the following detailed description of the procedurally tortured path of the case up to that time.

Eighteen months prior to the hearing in damages, the plaintiffs' attorney had first sought discovery, and continued to seek discovery over the ensuing months. The defendants did not file any objection, yet they failed to comply with the discovery requests. Specifically, the defendants flagrantly had refused to comply. FN3 Thus, the plaintiffs' attorney was forced to move for compliance, and he obtained a ruling that a default would enter if the defendants continued to fail to comply. Again, they failed to comply, and the plaintiffs' counsel was forced to move for a default. The defendants *then* filed an objection to discovery. The plaintiffs' counsel then took more depositions, coupled with further discovery requests, with which the defendants again failed to comply; this required a hearing, during which the plaintiffs' counsel was required to "spend a lot of time going over this." The trial court then agreed with the plaintiffs' counsel that the defendants' discovery objections had been untimely, *and ordered the defendants to pay the plaintiffs' attorney's fees.* Nonetheless, the court opened the default, based on the defendants' representations that they would now comply with the discovery requests. Thereafter,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

267 Conn. 456
267 Conn. 456, 839 A.2d 589
**(Cite as: 267 Conn. 456)**

counsel for the plaintiffs met with counsel for the defendants in an attempt to reach an understanding **608 about the defendants' compliance.    The defendants' attorney agreed that they would comply.    The plaintiffs' counsel then sent a letter to the defendants' counsel reaffirming their understanding that the defendants would produce the relevant materials within thirty days, and stating if he had "anything wrong ...    *486 [or had] misconstrued something" the defendants should "please tell [counsel] ... so we can address it now, rather than later."    The defendants neither responded to the letter nor complied with the outstanding discovery requests, forcing the plaintiffs' counsel again to move for a default for failure to comply with discovery.    As a result, the court again entered a default against the defendants for failure to comply with discovery requests.    The defendants *again* moved to set the default aside, based on their earlier objections to discovery, which already had been determined to have been untimely.    The plaintiff's counsel, consequently, was *again* required to file an objection laying out the prior history. FN4

> FN3. The plaintiffs' counsel represented to the court, without objection from the defendants, that he had "taken two depositions with [the defendants] where I sat across the table from them, and they told me how they've made no attempt [to obtain or disclose] the [requested] discovery materials."

> FN4. The hearing in damages took place at the end of June, 2001.    The plaintiffs' counsel's objection, dated December 26, 2000, provided the following:    two depositions had been commenced, both with substantial production requests, which were "almost completely ignored," with no objections filed, and that the defendants "simply chose not to produce the requested documents";    the defendants had filed objections to the plaintiffs' interrogatories and production requests "long after the deadline for compliance," and used the late filed objections as a basis for opening a default;    the trial court had opened the default, but imposed costs on the defendants, advising both counsel to work out the objections or place them on a calendar;    thereafter both counsel reviewed all the discovery requests and the defendants' counsel agreed to comply with them, an agreement that was confirmed in writing by

the plaintiffs' counsel's letter, which was attached;    and because the original discovery requests had been filed on December 2, 2000, the plaintiffs had been unsuccessfully seeking discovery for one year.

It was on this state of the record that the court considered the defendants' motion to open the default.    The court denied the motion, and proceeded immediately to the hearing in damages.    Thus, although the preceding representations were not offered to the court in *specific* connection with the plaintiffs' ultimate request for attorney's fees, the court certainly was entitled to take them into account in connection with that request. FN5

> FN5. Curiously, the majority neglects to mention this entire proceeding in its discussion of the award of attorney's fees.    Indeed, the majority does not even give any weight to the fact that the trial court had just completed hearing and deciding the hearing in damages, which covered both liability and damages.    Instead, the majority suggests that this is a case in which the award was "predicated solely upon a bare request for such fees."

 *487 Second, the trial court file, which the trial court that conducted the hearing in damages had available to it for use in connection with the claim for attorney's fees, confirms the history recounted by the plaintiffs' attorney, including the needless litigation costs associated with the defendants' repeated discovery abuses.    That file includes the following, in addition to the normal cohort of pleadings. FN6 The plaintiffs' filed a second motion for default "for repeated refusal and non-compliance with discovery."    That motion also notes the court's prior order for the defendants to comply with numerous discovery requests, and the defendants' untimely objections thereto.    In addition, in October, 2000, the trial court again ordered compliance, with a warning that a default would enter if the defendants again refused to **609 comply, and with an award of attorney's fees at that time.    The file further reflects the defendants' continued failure to comply, and their failure to pay the attorney's fee award.    The plaintiffs' filing also discloses the depositions at which the defendants failed to produce the documents requested in connection therewith, and the court's granting of the plaintiffs' motion for default based on the defendants' repeated discovery violations, together with copies of various renewed notices of depositions and ignored production requests.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN6. The prayer for relief in the original complaint included a request for attorney's fees. Thus, it was apparent from the very beginning that such an award was at least a possibility, and the defendants have never claimed surprise regarding the request.

This entire record-the hearing before the court on the defendants' final motion to open the default, the hearing in damages, and the trial court file-is more than ample to surmount any reasonable requisite procedural or evidentiary threshold so as to justify the court's award of attorney's fees. Thus, the majority's suggestion that the only evidence to support an award of attorney's **\*488** fees was the plaintiffs' posttrial request for \$25,000 is simply contrary to the record.

Indeed, _Bizzoco v. Chinitz,_ supra, 193 Conn. at 310-11, 476 A.2d 572, is directly on point. In that case, the promissory note signed by the defendant "expressly authorized the recovery of a reasonable attorney's fee." _Id.,_ at 310, 476 A.2d 572. FN7 The defendant challenged the trial court's award of such a fee in the amount of \$5868, amounting to 15 percent of the judgment, claiming that "the evidence at trial was insufficient because there was nothing before the court about the services performed by the plaintiff's counsel or about the hours that counsel had spent on the case." _Id._ This court expressly rejected that challenge, stating that "_courts may rely on their general knowledge of what has occurred at the proceedings before them to supply evidence in support of an award of attorney's fees. In this case, the trial court knew that the plaintiff's counsel had taken a lengthy deposition, had engaged in a two-day trial, and had prepared a post-trial brief. The court was in a position to evaluate the complexity of the issues presented and the skill with which counsel had dealt with these issues. This record was sufficient to support the award made by the court._" (Emphasis added.) _Id.,_ at 310-11, 476 A.2d 572. Similarly, in the present case, the trial court knew that the plaintiffs' counsel had gone through lengthy and contentious discovery proceedings, including several depositions and repeatedly reopened defaults, had engaged in a one day trial on both liability and damages issues, and had filed a posttrial brief. As in _Bizzoco,_ "[t]his record was sufficient to support the award made by the court." _Id.,_ at 311, 476 A.2d 572.

FN7. In evaluating whether a trial court's award of an attorney's fee is based on sufficient evidence in the record, I can perceive no legitimate basis for

distinguishing between a note calling for a reasonable fee and a statute calling for a reasonable fee. Indeed, I do not read the majority opinion to suggest otherwise.

The majority's concession that my reading of _Bizzoco_ is "reasonable," is, although generous, also disingenuous.**\*489** In my view, that is not only a reasonable reading of _Bizzoco,_ it is the only accurate reading of it. The majority, moreover, does not suggest an alternative reading. Therefore, the majority has, without explaining what is wrong with _Bizzoco,_ implicitly overruled it. The doctrine of stare decisis requires more than that. _Miller v. Egan,_ 265 Conn. 301, 325, 828 A.2d 549 (2003) ( "[t]he doctrine of stare decisis counsels that a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it" [internal quotation marks omitted]); **\*\*610**_State v. Ferguson,_ 260 Conn. 339, 367 n. 18, 796 A.2d 1118 (2002) (same).

In addition, I note that the defendants do _not_ claim that the award of \$20,000 in attorney's fees was unreasonable in amount. Indeed, given the total award of \$335,000, including \$80,000 in punitive damages for reckless, willful and malicious conduct by the defendants, the fee award amounts to slightly less than 6 percent of the total award of damages. That strikes me as eminently reasonable in amount, based on the factors set forth by this court in _Andrews v. Gorby,_ supra, 237 Conn. at 24 n. 19, 675 A.2d 449. See footnote 2 of this opinion.

In this connection, furthermore, I also note that at no time did the defendants attempt in the trial court to challenge the award, either as to its evidentiary basis or as to the reasonableness of its amount. When the plaintiffs filed their posttrial brief requesting \$25,000 in attorney's fees, the defendants did not ask the court to postpone any such award until they had an opportunity to challenge it, they did not suggest to the court that the plaintiffs should present documentation or evidence to support the award, and they did not ask for a hearing on the award. When the court made the award, they did not ask the court for an articulation of its evidentiary basis. Had the defendants done any of these things, it is clear to me from this record that both the plaintiffs and the court could have and would have made explicit **\*490** what is vividly implicit as to both the evidentiary basis of the award and its reasonableness in amount. Instead, the defendants remained silent on the entire issue until the filing of their brief in this court, in which they devoted a total of less than one page to it. Furthermore, the trial court did not perceive the necessity of further briefing, documentation or

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

267 Conn. 456
267 Conn. 456, 839 A.2d 589
**(Cite as: 267 Conn. 456)**

evidence, before rendering its award.    Compare _Appliances, Inc. v. Yost,_ supra, 186 Conn. at 681, 443 A.2d 486 (trial court sua sponte requested supplemental brief itemizing legal services rendered). I agree that, as we have stated previously, it is the better practice for attorneys seeking fees to keep and produce time records, and I also agree that is the better practice for such attorneys, when they file a request for such fees, to enter into the record, in some appropriate form, a specific statement of the basis for the request.    See _Miller v. Kirshner,_ supra, 225 Conn. at 201, 621 A.2d 1326.    That does not mean, however, as the majority now holds, that a failure to make such a specific entry deprives the trial court of an evidentiary basis to render an unchallenged award based on it's the court's own firsthand knowledge of the case before it and of the file available to it.

## II

This brings me to the majority opinion and my reasons for disagreeing with it.    As a predicate, it is necessary to summarize what I perceive to be its reasoning.

I begin by noting that the majority opinion is a paradigmatic example of the tail wagging the dog. FN8    This is an appeal from a total judgment of $335,000, of which only $20,000 is the attorney's fee portion.    In addition, as I have already indicated, the portion of the defendants' brief challenging the attorney's fee award constituted less than one page. Furthermore,    the    majority    **\*491** spends approximately one-half of its opinion affirming the other substantive aspects of the judgment, which constituted **\*\*611** $315,000 in damages, and approximately the same amount of the opinion going to great lengths to articulate a new procedural wrinkle for the award of attorney's fees, but, at the same time, the majority declines to apply that rule to the facts of the present case.

> FN8.  Lest I be accused, by virtue of the
> length of this opinion, of the same thing, I
> point out that, because I disagree with the
> majority's reasoning, I am compelled to add
> my tale to the story in order to explain that
> disagreement.

The majority opinion rests on the following chain of reasoning: (1) the weight of our case law requires more than the trial court's general knowledge of the proceedings before it and of the reasonable value of legal services; (2) there must be a clearly stated and described factual predicate for the fees sought, _apart_ from the court's general knowledge of what

constitutes a reasonable fee, and that "a threshold _evidentiary_ showing is a prerequisite for an award of attorney's fees" (emphasis added); (3) therefore, the party seeking the fees "must present to the court at the time of trial or, in the case of a default judgment, at the hearing in damages, a statement of the fees requested and a description of services rendered," thus leaving "no doubt about the burden on the party claiming attorney's fees," and giving the other party "an opportunity to challenge" that request;  (4) this holding will eliminate "the undesirable burden imposed upon the courts when a party seeks an award of attorney's fees predicated solely upon a bare request for such fees";  (5) consequently, parties now "must supply the court with a description of the nature and extent of the fees sought, to which the court may apply its knowledge and experience in determining the reasonableness of the fees requested"; _but_ (6) none of this applies _to the present case_ because the defendants took no action to challenge the plaintiffs' request for fees and, therefore, the award must be upheld.    This chain of reasoning is fundamentally flawed.

**\*492** To take the last link in the chain first, it escapes me why, if this result is required by the weight of our preexisting case law, as the majority insists, it should not apply in the present case.    If, as the majority concludes, and as I agree, an award of attorney's fees is part of the plaintiff's burden of establishing damages, and if, as the majority also concludes, and as I do _not_ agree, that case law requires a _separate_ statement "of the fees requested and a description of services rendered," then I simply fail to see why the majority deprives the defendants of their right to prevail in the present case simply because they remained silent.    After all, a defendant who is faced with an absence of necessary proof by the plaintiff on an essential element of the plaintiff's damages has no obligation to do any more than remain silent.    Such a defendant may rely on the fact that its adversary simply has failed to establish that part of his case and may, as the defendants did here, claim such a lack of evidentiary sufficiency on appeal.    See, e.g., _Lipshie v. George M. Taylor & Son, Inc.,_ 265 Conn. 173, 175, 828 A.2d 110 (2003).

I do not, of course, advocate such a result in the present case, because in my view the plaintiffs must prevail on the basis of our existing case law.    I merely point this out as an example of the self-contradictory nature of the majority's reasoning.

Furthermore, the majority appears to divide the requisite showing for an award of attorney's fees into two parts, namely: (1) a sufficient _evidentiary_ basis; and (2) a "_statement_" presumably by the party's counsel-"of the fees requested and a description of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

services rendered." (Emphasis added.) Under the majority opinion, however, the second part apparently will satisfy the first part. But why? It is settled law that statements of counsel do not ordinarily constitute evidence. **\*\*612**_Cologne v. Westfarms Associates,_ 197 Conn. 141, 153, 496 A.2d 476 (1985) ; **\*493**_Celentano v. Zoning Board of Appeals,_ 135 Conn. 16, 18, 60 A.2d 510 (1948). I therefore fail to see why a formal statement of counsel satisfies any evidentiary requirement.

If, however, as seems more likely, the majority instead means that a "threshold _evidentiary_ showing"; (emphasis added); does not really mean "evidence," but just the formal statement of counsel that the majority now requires, then the majority has elevated form over substance to Everestian heights, particularly as applied to this record. There can be little doubt that the trial court, as well as the defendants, knew full well the basis of the plaintiffs' request for attorney's fees, without a formal separate statement of that basis. To mix the metaphor even more, the tail that is wagging the dog is little more than a stump. Furthermore, on this understanding of the majority's meaning, it has rendered wholly superfluous our numerous statements that "[c]ourts may rely on their general knowledge of what has occurred in the proceedings before them _to supply evidence_ in support of an award of attorney's fees." (Emphasis added; internal quotation marks omitted.) _Miller v. Kirshner,_ supra, 225 Conn. at 201, 621 A.2d 1326; _Andrews v. Gorby,_ supra, 237 Conn. at 24, 675 A.2d 449.

The other links in the majority's chain of reasoning are similarly flawed. The majority elaborately describes the facts of the cases from which it draws the lesson that the weight of our case law requires more than the court's general knowledge of the proceedings and of the reasonable value of legal services, namely, that weight of authority requires a separate statement of the fees requested and services rendered. See _Shapero v. Mercede,_ supra, 262 Conn. at 1, 808 A.2d 666; _Miller v. Kirshner,_ supra, 225 Conn. at 185, 621 A.2d 1326; _Appliances, Inc. v. Yost,_ supra, 186 Conn. at 673, 443 A.2d 486; _Piantedosi v. Floridia,_ supra, 186 Conn. at 275, 440 A.2d 977; _Hartford Electric Light Co. v. Tucker,_ 183 Conn. at 85, 438 A.2d 828 (1981). It is true that in each of these cases, in which we affirmed the award of fees, there was in **\*494** fact more than the court's knowledge of the proceedings and of the value of services in general. Contrary to the majority's assertion, however, in none of those cases did we say or even intimate that the "more" was a _requisite_ for such an award. More important, in the only case in which the court made its award _without_ the "more,"

that is, on the basis of its knowledge of the proceedings before it and its general knowledge of the value of legal services; _Bizzoco v. Chinitz,_ supra, 193 Conn. at 304, 476 A.2d 572; we squarely affirmed the award, using the same analytical framework that we have employed in all of the cases on which the majority relies. I simply do not see why _Bizzoco_ is deprived of its place on the scale measuring the weight of our authority. It is on point, it makes good sense, neither party has asked this court to overrule it, and the majority makes no attempt to justify doing so. Thus, the majority's characterization of the weight of our authority is more properly described as what the majority _wants_ that weight to be.

Finally, the majority justifies its new rule on the basis that it will eliminate "the undesirable burden imposed upon the courts when a party seeks an award of attorney's fees predicated solely upon a bare request for such fees." This justification falls of its own weight. First, I am unaware of any such "burden," undesirable or desirable. Certainly, neither the majority nor the defendants in this case have presented any evidence thereof; indeed, the defendants have never even claimed that to be the case. Furthermore, the trial court in this case did not seem at all burdened by the plaintiffs' claim for fees, **\*\*613** and had no apparent difficulty making an eminently reasonable award. Certainly this trial court was, as will be any of our trial courts, aware of the option of requesting supplemental briefing, itemizing the legal services rendered, if it determined that it needed more than it already had before it in order to make an intelligent award of attorney's fees. See **\*495** _Appliances, Inc. v. Yost,_ supra, 186 Conn. at 681, 443 A.2d 486. Finally, it borders on the facetious to suggest that the present case involves a request for attorney's fees "predicated solely upon a bare request...." The record, as I have demonstrated in part I of this opinion, is wholly to the contrary. Thus, in my view, the majority has fashioned a remedy for a problem that has not been shown to exist.

I would, therefore, affirm the award of $20,000 in attorney's fees to the plaintiffs.

Conn.,2004.

Smith v. Snyder

267 Conn. 456, 839 A.2d 589

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

✎JS 44   (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Lectron Labs, Inc.

## DEFENDANTS

C.S. Industries, LLC; Donald Snyder; and
Bettina Snyder

**(b)** County of Residence of First Listed Plaintiff  Fairfield
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed   Hampden
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Daniel J. Finnegan, Esq., BUlkley, Richardson
& Gelinas, 1500 Main Street, Suite 2700,
Springfield, MA 01115

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☐ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☒ 4  Diversity
(Indicate Citizenship of Parties
in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                            and One Box for Defendant

|  | DEF |  | DEF |
|---|---|---|---|
| Citizen of This State | ☐ 1  ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4  ☒ 4 |
| Citizen of Another State | ☐ 2  ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5  ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3  ☐ 3 | Foreign Nation | ☐ 6  ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC | 28 USC 157 | ☐ 450 Commerce/ICC Rates, etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product | ☒ 370 Other Fraud | ☐ 690 Other | | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | **SOCIAL SECURITY** | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | & Disclosure Act | | Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | | ☐ 870 Taxes (U.S. Plaintiff | Determination Under Equal Access to |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | or Defendant) | Justice |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS — Third Party | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | Security Act | 26 USC 7609 | State Statutes |
| | | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN   (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to
District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION   (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause.
Do not cite jurisdictional statutes unless diversity.)

Plaintiff has a Connecticut State Court Judgement that it is seeking to enforce in
Massachusetts.  Case is filed under 28 U.S.C. Sec. 1332

## VII. REQUESTED IN
COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

**DEMAND $**
$350,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☒ No

## VIII. RELATED CASE(S)
IF ANY

(See instructions):

JUDGE

DOCKET NUMBER

DATE
6/5/05

SIGNATURE OF ATTORNEY OF RECORD
Daniel J. Finnegan

FOR OFFICE USE ONLY

RECEIPT #            AMOUNT            APPLYING IFP            JUDGE            MAG. JUDGE

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

FILED
IN CLERK'S OFFICE

1.  TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY) _Lectron Labs, Inc. v. C.S. Industries,_
    _LLC_

    2005 JUN -6  A 10: 21

2.  CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE
    CIVIL COVER SHEET.  (SEE LOCAL RULE 40.1(A)(1)).

    DISTRICT OF MASS

    —    I.     160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

    —    II.    195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,
               740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.

                                                           *Also complete AO 120 or AO 121
                                                           for patent, trademark or copyright  cases

    X    III.    110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
                  315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
                  380, 385, 450, 891.

    —    IV.    220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
                  690, 810, 861-865, 870, 871, 875, 900.

    —    V.     150, 152, 153.

3.  TITLE AND NUMBER, IF ANY, OF RELATED CASES.  (SEE LOCAL RULE 40.1(E)).

4.  HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS
    COURT?                                                  YES ☐    NO ☒

5.  DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE
    PUBLIC INTEREST?  (SEE 28 USC 2403)                          YES ☐    NO ☒
    IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?

                                                                             YES ☐    NO ☐

6.  IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO
    TITLE 28 USC 2284?                                               YES ☐    NO ☒

7.  DO ALL PARTIES IN THIS ACTION RESIDE IN THE CENTRAL SECTION OF THE DISTRICT OF MASSACHUSETTS
    (WORCESTER COUNTY) - (SEE LOCAL RULE 40.1(C)).                       YES ☐    NO ☒
    OR IN THE WESTERN SECTION (BERKSHIRE, FRANKLIN, HAMPDEN OR HAMPSHIRE COUNTIES)? -
    (SEE LOCAL RULE 40.1(D)).                                              YES ☐    NO ☒

8.  DO ALL OF THE PARTIES RESIDING IN MASSACHUSETTS RESIDE IN THE CENTRAL AND/OR WESTERN SECTIONS OF
    THE DISTRICT?                                                    YES ☒    NO ☐
    (a)      IF YES, IN WHICH SECTION DOES THE PLAINTIFF RESIDE? _N/A_

9.  IN WHICH SECTION DO THE ONLY PARTIES RESIDING IN MASSACHUSETTS RESIDE? _Western_

10. IF ANY OF THE PARTIES ARE THE UNITED STATES, COMMONWEALTH OF MASSACHUSETTS, OR ANY GOVERNMENTAL
    AGENCY OF THE U.S.A. OR THE COMMONWEALTH, DO ALL OTHER PARTIES RESIDE IN THE
    CENTRAL SECTION; YES ☐ NO ☐            OR WESTERN SECTION; YES ☐    NO ☐

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME _Daniel J. Finnegan, Esq._
ADDRESS _Bulkley, Richardson & Gelinas, 1500 Main Street, Suite 2700, Springfield, MA 01115_
TELEPHONE NO. _(413) 272-6224_

(Categfrm.rev - 3/97)